# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DARWIN CHAMBERS COMPANY L.L.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14-CV-1925 CAS |
| ) | |
| BENNINGTON COLLEGE CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This removed diversity matter is before the Court on defendant Bennington College Corporation's ("Bennington") motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure or, in the alternative, to transfer for improper venue. Plaintiff Darwin Chambers Company L.L.C. ("Darwin") opposes the motion and it is fully briefed. For the following reasons, the Court will grant Bennington's motion to dismiss for lack of personal jurisdiction.

## I. Background[1]

Darwin is a limited liability company organized under the laws of the State of Missouri with its principal place of business in St. Louis, Missouri. Darwin manufactures and supplies scientific equipment, including environmental, plant growth and stability test chambers. Bennington is a Vermont non-profit corporation that operates a private liberal arts college in Bennington, Vermont, which is its only place of business. Declaration of David Rees, ¶ 3.

---

[1]Except as otherwise stated, the factual background is taken from the Affidavit of Chris Barnett, Darwin's President, and Darwin's Petition.

Bennington's representatives contacted Darwin in Missouri by telephone in September 2013 and said that Bennington was looking for someone to design certain chambers. After this conversation, on or about September 5, 2013, Darwin mailed Bennington price quotes for the chambers it requested. (Rees Decl., Ex. 1.) The price quotes included detailed descriptions of the products to be purchased, a unit price, a time in which to accept, and shipping terms. After that, Darwin had a number of telephone calls and email communications with Bennington. Often Bennington would initiate the call to Darwin, which it knew was located in Missouri.

As a result of the additional communications, Bennington sent Darwin two purchase orders on November 7, 2013. (Rees Decl., Ex. 2.) Each purchase order referenced the number of the respective Darwin price quote. The purchase orders were for two walk-in and two reach-in chambers (the "Chambers"). The purchase orders were addressed to Darwin at its business address in St. Louis. On November 21, 2013, Darwin issued two "Order Acknowledgments."[2] Each Order Acknowledgment references the number of the respective Bennington purchase order, and reflects that Darwin is located in Missouri.

Darwin constructed the Chambers in St. Louis based on the specifications provided by Bennington and as included in the Order Acknowledgment. The construction took Darwin three to four months. During the period of construction and after, Darwin had many communications with Bennington via telephone and email, many of which were initiated by Bennington. Bennington knew it was speaking to a company located in Missouri. Darwin created drawings and submittals in St. Louis, Missouri, which Bennington subsequently approved by emailing its approval to Darwin.

---

[2]The Purchase Order for the walk-in cabinets and both of the Order Acknowledgments are attached as exhibits to Darwin's Petition.

In January 2014, Darwin representatives visited Bennington's place of business in Vermont before the scheduled delivery and installation of the Chambers. Rees Decl., ¶ 8. At that time, Darwin discovered that the Chambers Bennington ordered would not operate in the space Bennington had designated for them, and the space was not as Bennington had described it to Darwin. As a result, Darwin was required to extensively modify Bennington's order to accommodate the limitations of Bennington's designated space. Petition, ¶¶ 22-25. Between February and May 2014, Darwin's representatives went to Bennington's place of business in Vermont on several occasions for the installation and delivery of the Chambers. Id., ¶ 9. All in-person interactions between Darwin and Bennington occurred in Vermont. Id., ¶ 11. On September 15, 2014, Bennington gave Darwin written notice that it revoked acceptance of the Chambers. Id., ¶ 10. Bennington has not paid Darwin for the Chambers, based on its assertion that they do not work properly. Id., ¶ 11.

Darwin filed suit against Bennington on October 15, 2014 in the Circuit Court for the City of St. Louis, State of Missouri. Darwin's Petition asserts claim for breach of contract, suit on account, quantum meruit, and a declaratory judgment that Bennington did not effectively revoke its acceptance of the Chambers under the parties' contract. On October 16, 2014, Bennington filed suit against Darwin in the United States District Court for the District of Vermont. Bennington's Complaint alleges that Darwin's attempts to repair the Chambers have failed, that the Chambers do not conform to the parties' contracts, and that the nonconformities substantially impair the Chambers' value to Bennington. The Complaint seeks a declaration concerning the termination of the contract, Bennington's right to revoke acceptance of the Chambers, and whether payment is due to Darwin; it asserts a claim for breach of contract.

On November 14, 2014, Bennington removed Darwin's Petition from state court and subsequently filed the instant motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer for improper venue.

## II. Legal Standard

A party seeking to invoke the jurisdiction of a federal court bears the burden to establish that jurisdiction exists. Moog World Trade Corp. v. Bancomer, S.A., 90 F.3d 1382, 1384 (8th Cir. 1996). "If jurisdiction is controverted, the plaintiff has the burden of proving facts supporting personal jurisdiction." Coen v. Coen, 509 F.3d 900, 904 (8th Cir. 2007). Although the Court must view evidence in a light most favorable to the plaintiff and resolve factual conflicts in plaintiff's favor, the burden of proof does not shift to the party challenging jurisdiction. Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 820 (8th Cir. 2014).

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts 'to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.'" K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004)). "Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion." Id. (internal citations, quotation marks and quoted case omitted). The evidence must be viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in its favor in deciding whether the plaintiff made the requisite showing. Id. (citing Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89 F.3d 519, 522 (8th Cir. 1996)).

"Missouri's long-arm statute authorizes personal jurisdiction over defendants who, inter alia, transact business, make a contract, or commit a tort within the state." Viasystems, Inc. v. EBM–Papst St. Georgen GmbH & Co., KG, 646 F.3d 589, 593 (8th Cir. 2011) (citing Mo. Rev. Stat. § 506.500.1). "In adopting the long-arm statute, the Missouri legislature 'intended to provide for jurisdiction, within the specific categories enumerated in the statutes [e.g., transacting business or making a contract within the state,] to the full extent permitted by the due process clause.'" K-V Pharm. 648 F.3d at 592 (brackets in original) (quoting State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984) (en banc)).

In order to satisfy due process, a defendant must have sufficient minimum contacts with the forum state "such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Dever, 380 F.3d at 1073 (quoting Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)). Minimum contacts for purposes of personal jurisdiction may be evaluated under two theories: general jurisdiction and specific jurisdiction. Id. For general jurisdiction to exist, the defendant must have "continuous and systematic" contacts with the forum state, even if the plaintiff's claims do not arise out of those activities. Id. (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984)). "In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." Id. (citing Helicopteros, 466 U.S. at 414). In other words, the cause of action must "'arise out of' or 'relate to' a defendant's activities within a state." Lakin v. Prudential Sec., Inc., 348 F.3d 704, 707 (8th Cir. 2003) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). Both theories of jurisdiction require "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking

the benefits and protections of its laws." Dever, 380 F.3d at 1073 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

**III. Discussion**

    A.  Jurisdiction Under Missouri's Long-Arm Statute

Darwin asserts that under Missouri's long-arm statute, § 506.500, Missouri Revised Statutes (2000), this Court may exercise personal jurisdiction over Bennington under either of two theories: the transaction of business within the state, or the making of a contract within the state. The Court will address each separately.

        1.  *Transaction of Business*

Darwin asserts that Bennington transacted business in Missouri under the long-arm statute because Bennington contacted Darwin to solicit business from it, and therefore purposefully availed itself of the privilege of doing business in Missouri. Darwin also states that Bennington's representatives contacted it on numerous occasions by email and telephone in connection with the Chambers, the contract was accepted in Missouri, and the Chambers were built in Missouri. Finally, Darwin asserts that it was damaged in Missouri when Bennington refused to pay under the contract. Darwin argues that the "transaction of any business" prong of the long-arm statute is construed broadly, and may consist of a single transaction if the transaction is that upon which the plaintiff is suing, citing State ex rel. Nixon v. Beer Nuts, Ltd., 29 S.W.3d 828 (Mo. Ct. App. 2000), and Sloan-Roberts v. Morse Chevrolet, Inc., 44 S.W.3d 402 (Mo. Ct. App. 2001).

Darwin's main argument in support of its assertion that Bennington transacted business in Missouri is the fact that Bennington initiated the first contact between the parties, supplemented by the mail, email and telephone contacts. The fact that Bennington initiated the first contact is not dispositive of whether this Court has personal jurisdiction over it. See Andra v. Left Gate Prop.

6

Holding, Inc., __ S.W.3d __, 2015 WL 777741, at *9 (Mo. Feb. 24, 2015) (en banc) (quoted case omitted). The Eighth Circuit recently discussed principles attendant to the "transaction of business" prong of the Missouri long-arm statute:

> Missouri courts construe "transaction of any business" broadly. Gaertner, 677 S.W.2d at 327. A person or firm transacts business by visiting Missouri or sending its product or advertising here. See Chromalloy, 955 S.W.2d at 4 (finding that the foreign actor transacted business by "travel[ing] to Missouri intending to contact a Missouri corporation and propose the purchase of one of its assets"); Gaertner, 677 S.W.2d at 327-28 (finding that the foreign actor "transacted business in Missouri by shipping materials into this state . . . and retaking them after the work had been done"); State ex rel. Newport v. Wiesman, 627 S.W.2d 874, 877 (Mo. banc 1982) (finding that the foreign actor transacted business by establishing two franchised dealers in Missouri); Mead v. Conn, 845 S.W.2d 109, 112 (Mo. App. 1993) ("Dr. Henderson did transact business in Missouri by sending the EKG test results to Missouri for analysis under a business relationship where he paid for said services and stood to profit from the same."); Boatman's First Nat'l Bank of Kansas City v. Bogina Petroleum Eng'rs, 794 S.W.2d 703, 704 (Mo. App. 1990) (holding that a single visit by the foreign actor to Missouri was the transaction of business); see also Precision Const. Co. v. J.A. Slattery Co., 765 F.2d 114, 115-16 (8th Cir. 1985) (finding jurisdiction under the Missouri statute where the foreign actor solicited orders from the forum, maintained offices and employees in the forum, and shipped product to the forum); Simpson v. Dycon Int'l, Inc., 618 S.W.2d 455, 457 (Mo. App. 1981) (finding jurisdiction where the foreign actor sent advertising into Missouri and sold equipment to a business in Missouri pursuant to a distributorship agreement); cf. Schoenlaub, 540 S.W.2d at 33-34 (finding that a foreign bank did not transact business in Missouri when it "had no contacts with Missouri people or corporations except in the conduct of normal banking operations," including paying drafts drawn on accounts of its customers received from Missouri banks).
>
> On the other hand, the use of mail or telephone communications to Missouri is not by itself the transaction of business. Johnson Heater Corp. v. Deppe, 86 S.W.3d 114, 120 (Mo. App. 2002); Capitol Indem. Corp v. Citizens Nat'l Bank of Fort Scott, N.A., 8 S.W.3d 893, 904 (Mo. App. 2000); see Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 312 (8th Cir. 1982).

Dairy Farmers of Am., Inc. v. Bassett & Walker Intl, Inc., 702 F.3d 472, 476 (8th Cir. 2012).

The Court concludes that Bennington did not transact business in Missouri within the meaning of the long-arm statute. For Bennington to have done so, it must have conducted "some activity, directly or indirectly related to the transaction in question" in Missouri, that then gives rise

7

to the cause of action asserted in the case. Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 312 (8th Cir. 1982). In Scullin Steel, the Eighth Circuit held that although the Missouri seller plaintiff and the Pennsylvania buyer of steel castings used the telephone and mail in course of their dealings, payments were made in Missouri, the seller plaintiff partially performed under the contract in Missouri and product delivery was made in Missouri, the buyer did not transact business in Missouri within purview of the Missouri long-arm statute where all negotiations, before and after execution of the sales agreement, were conducted in Pennsylvania, none of the buyer's personnel ever visited Missouri in connection with sales agreement or specifications, and the buyer was not authorized to do business in Missouri, had no office or personnel in Missouri, owned no real property in Missouri, and did not have any agent for service of process or for any other purpose in Missouri. Id., 676 F.2d at 312-13.

Here, Bennington sent no products to Missouri and no Bennington employee ever entered Missouri. See Dairy Farmers, 702 F.3d at 476 (citing cases). Under Scullin Steel, Bennington's communications with Darwin's Missouri headquarters by phone, email, and mail do not amount to the transaction of business and, unlike Scullin Steel, the product in this case was delivered to Vermont, not Missouri. Bennington did not transact business in Missouri and therefore is not within the reach of Missouri's long-arm statute under that prong of the statute.[3]

---

[3]The Missouri state court decisions Darwin cites for the proposition that a single transaction can constitute the transaction of business do not change this result. In both cases, the non-resident defendant either purchased or sold products in Missouri, thus bringing it squarely within the transaction of business prong of the long-arm statute. See Beer Nuts, 29 S.W.3d at 833 (North Carolina defendant's Internet sales of beer club memberships and shipment of beer to Missouri residents was the transaction of business in Missouri); Sloan-Roberts, 44 S.W.3d at 407-08 (Kansas defendant's purchase of vehicle in Missouri for resale in Kansas was the transaction of business in Missouri).

2. *Making of a Contract*

In the alternative, Darwin asserts Bennington entered into a contract in Missouri and the Court may exercise personal jurisdiction on that basis. Darwin asserts that the final binding act necessary to contract formation occurred in Missouri when it accepted the contract by issuing Order Acknowledgments after receiving Bennington's purchase orders. For purposes of jurisdiction under the Missouri long-arm statute, a contract is deemed to have been made where acceptance of the contract occurs. Peabody Holding Co., Inc. v. Costain Group PLC, 808 F. Supp. 1425, 1433 (E.D. Mo. 1992); Wilson Tool & Die, Inc. v. TBDN-Tennessee Co., 237 S.W.3d 611, 615 (Mo. Ct. App. 2007).

Bennington responds that the parties' contract was formed in Vermont, where it accepted Darwin's detailed price quotes by issuing purchase orders. Bennington states that under Missouri law, price quotes are deemed to be an offer for acceptance where the quotes are detailed enough that they "can amount to an offer creating the power of acceptance; to do so it must reasonably appear from the price quote that assent to the quote is all that is needed to ripen the offer into a contract," citing Nordyne, Inc. v. International Controls & Measurements Corp., 262 F.3d 843, 846 (8th Cir. 2001) (quoting Brown Machine, Div. of John Brown, Inc. v. Hercules, Inc., 770 S.W.2d 416, 419 (Mo. Ct. App. 1989)). "Factors relevant in determining whether a price quotation is an offer include the extent of prior inquiry, the completeness of the terms of the suggested bargain, and the number of persons to whom the price quotation is communicated." Nordyne, id. (quoting Restatement (Second) of Contracts § 26, comment c). Bennington asserts that Darwin's price quotes constituted an offer because they were sent following discussions by the parties, contained a description of the products to be purchased, a unit price, a time to accept, and shipping terms, and therefore the

9

acceptance was completed and signed by Bennington in Vermont and mailed to Darwin from Vermont.

Here, the relevant factors support Bennington's position and indicate that Darwin's price quotes were offers creating the power of acceptance. Bennington and Darwin had been communicating for several days regarding the contract at issue before the September 5, 2013 price quotes were sent, the quotes were sent only to Bennington, and they included detailed specifications for the Chambers, quantity, price, and time in which to accept, as well as packaging, shipping, and payment terms. Also, the quotes were for products specifically designed to meet Bennington's specifications. See Nordyne, 262 F.3d at 846. The Court finds that Darwin's quotes included sufficient terms to constitute offers under Missouri law, that were accepted by Bennington in Vermont.

The Court concludes that Darwin has not met its burden to establish that acceptance of the contract occurred in Missouri. Because the contract in this case was formed in Vermont rather than Missouri, the contract prong of the Missouri long-arm statute is not a basis for the exercise of personal jurisdiction over Bennington.

B. Due Process Principles

Even if Bennington had transacted business or made a contract in Missouri within the meaning of the long-arm statute, this Court could not constitutionally exercise jurisdiction over it. "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980). A federal court may exercise diversity jurisdiction over a nonresident defendant only if the defendant has sufficient minimum contacts with the forum that "maintenance of the suit does not offend traditional notions of fair play and substantial justice."

10

International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks and quoted case omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson, 357 U.S. at 253. Due process is satisfied and jurisdiction may be exercised when the defendant's contacts with the forum state are such that it "should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297. In a contract case such as this, the Court evaluates "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine "whether the defendant purposefully established minimum contacts within the forum." Burger King, 471 U.S. at 479.

"Five factors determine whether sufficient contacts exist to support the exercise of personal jurisdiction: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties. The first three factors are primary, but all five and the totality of the circumstances determine whether personal jurisdiction exists." Dairy Farmers, 702 F.3d at 477 (quotation marks and quoted case omitted).

Darwin argues that Bennington purposefully availed itself of doing business in Missouri by knowingly and intentionally engaging Darwin, which it knew was located in Missouri, to enter into a contract under which Darwin spent several months constructing the Chambers in Missouri, and also repeatedly contacted Darwin in Missouri by telephone and email concerning changes and other needs for the Chambers. Darwin asserts that because Bennington knowingly and intentionally targeted it to build the Chambers in Missouri, it should expect to be haled into court here. Finally,

11

Darwin argues that the State of Missouri has an interest in protecting its citizens from damage and that interest outweighs any burden on Bennington to appear as a party defendant in Missouri.

Bennington replies that it did not transact business in Missouri because it is well settled that a defendant is not deemed to have transacted business in a foreign state merely because it ordered a product from the foreign state to be delivered in the defendant's home state, citing Scullin Steel, 702 F.3d at 476-77. Bennington states that it ordered products from its location in Vermont to be delivered and installed in Vermont, and it is merely fortuitous that Darwin is located in Missouri and manufactured the Chambers here, and Missouri is not relevant to the cause of action. Bennington asserts that while Darwin was transacting business in Missouri, it was not.

The Eighth Circuit's decisions in Scullin Steel, Wells Dairy, Inc. v. Food Movers International, Inc.,[4] and Dairy Farmers inform this Court's analysis. In Scullin Steel, the plaintiff's officer traveled to Pennsylvania to negotiate a contract with the buyer. Scullin Steel, 676 F.2d at 310, 312. None of the buyer's personnel ever visited Missouri in connection with the parties' contract, but the parties exchanged mail and telephone communications. Id. at 312. The original contract called for delivery of the product in Missouri over a two-year period and was later extended for two more years. Id. at 310. Scullin Steel sued the buyer for breach of contract in federal district court in Missouri, which dismissed for lack of personal jurisdiction. Id. After concluding that the defendant's conduct did not constitute the transaction of business within the meaning of the Missouri long-arm statute, id. at 312-13, the Eighth Circuit held that due process prevented the exercise of personal jurisdiction over the buyer where its primary contacts with Missouri were the existence of

---

[4] Wells Dairy, Inc. v. Food Movers International, Inc., 607 F.3d 515 (8th Cir. 2010).

a sales agreement with a Missouri resident calling for a product to be manufactured and delivered in Missouri, with payment made in Missouri. Id. at 313-14.

In Wells Dairy, defendant Food Movers International ("FMI") bought products from Wells Dairy via individual purchase orders it faxed to Wells Dairy in Iowa, each for purchase on credit offered by Wells Dairy. Wells Dairy, 607 F.3d at 517. Wells Dairy processed the purchase orders and issued invoices to FMI, which submitted payments to Wells Dairy in Iowa. Id. at 517-18. FMI requested that the products be made available for its customers to pick up from Wells Dairy's facility in Iowa. Id. at 517. Wells Dairy sued FMI in Iowa on eleven unpaid invoices. Id. at 517, 519. In contrast to Scullin Steel, the Eighth Circuit held that FMI had sufficient contacts with the forum state that personal jurisdiction did not violate due process. Id. at 520.

Like the buyer in Scullin Steel, FMI's contract called for payment to the forum for products manufactured in the forum and delivered to the forum. Id. The Eighth Circuit concluded that personal jurisdiction existed over the buyer based on "[i]mportant differences" that distinguished Scullin Steel from the facts of Wells Dairy. Id. Central to the Eighth Circuit's distinction between the two cases were that (1) FMI sought credit approval from Wells Dairy before the parties' business relationship began, and the credit application was processed and approved in Iowa and allowed FMI to charge approximately $6.5 million to its Wells Dairy account; and (2) FMI allowed its customers to take possession of the products in Iowa, "effectively accepting delivery and redelivering the product to its customers" in Iowa. Id. at 519. The Eighth Circuit stated, "Each of [FMI's] transactions with Wells Dairy, including the eleven at issue in this lawsuit, thus involved the submission of a purchase order, the accessing of credit, and 'customer pick up' in Iowa. FMI also remitted payment to Wells Dairy in Iowa for its purchases. The subject matter of this dispute—that FMI failed to pay for product it purchased on credit—thus occurred within Iowa." Id.

13

Finally, in Dairy Farmers, plaintiff Dairy Farmers of America ("DFA") filed suit in Missouri for breach of contract. 702 F.3d at 474. The defendant buyer had sought and received credit to purchase products from DFA, which was headquartered in Missouri. Id. DFA did not manufacture any products in Missouri, but at its Missouri headquarters determined the price and quantity of products it offered to customers, processed purchase orders, generated invoices, processed payments, coordinated inventory, and administered the preparation of shipping documents. Id. Although the parties did not have a long-term contract, over a two-year period the buyer purchased more than 3.5 million pounds of dairy products from DFA in individual telephone transactions totaling $5 million. Id. The buyer was based in Canada and dealt with DFA's Michigan-based representative, who traveled to Missouri several days each month and received approval for each transaction from DFA's Missouri headquarters. Id. For the transaction at issue in the suit, the buyer sent an email confirmation to DFA in Missouri and the parties' agreement called for shipment of products from Colorado to Mexico, and for the buyer to remit payment to Illinois. Id.

After considering the nature and quality of the buyer's contacts with Missouri, the Eighth Circuit concluded they did not support personal jurisdiction under the Due Process Clause. Id. at 478. It was significant to the analysis that the parties' negotiations did not occur in Missouri and that the goods involved neither originated from nor were destined for Missouri. Id. DFA's headquarters activities did not support personal jurisdiction where the contract was to purchase product manufactured and delivered in other states and called for payment in another state; the Eighth Circuit characterized DFA's administration of the contract in Missouri as "random, fortuitous, or attenuated." Id. (quoting Burger King, 471 U.S. at 486). Under these facts, the buyer's purchasing on credit did not support jurisdiction, in contrast to Wells Dairy where the buyer "contracted to purchase on credit product manufactured in Iowa for delivery in Iowa and to remit

14

payment to Iowa; the combination of these contacts alerted FMI that it should reasonably anticipate being haled into court in Iowa." Dairy Farmers, 702 F.3d at 479.

Here, the parties' agreement was formed in Vermont, not Missouri. The agreement called for the products to be manufactured in Missouri and delivered to Vermont, and for payment to be remitted to Missouri. The facts of this case are most closely analogous to those of Scullin Steel, although Bennington has fewer contacts with Missouri than did the buyer in Scullin Steel, because here the products were delivered in Vermont, not Missouri, and there was no extension of credit to Bennington.

Darwin's primary argument is that Bennington purposely availed itself of the privileges of doing business with a Missouri resident by contacting Darwin in Missouri and entering into a transaction that affects Missouri commerce. "This approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and the forum to drive the jurisdictional analysis." Walden v. Fiore, 134 S. Ct. 1115, 1125 (2014). Merely entering into a contract with a Missouri resident does not establish the requisite minimum contacts between a nonresident defendant and the forum state for due process purposes. Scullin Steel, 676 F.2d at 313.

Assuming that Bennington solicited the parties' agreement knowing that Darwin was a Missouri corporation, "that knowledge cannot create minimum contacts with [Missouri] because 'the plaintiff cannot be the only link between the defendant and the forum.'" Fastpath, 760 F.3d at 823 (8th Cir. 2014) (quoting Walden, 134 S. Ct. at 1125). "To find otherwise would 'improperly attribute a plaintiff's forum connections to the defendant and make those connections decisive in the jurisdictional analysis.'" Id. (brackets omitted) (quoting Walden, 134 S. Ct. at 1124). The due process minimum contacts analysis must focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." Walden, 134 S. Ct. at 1122. The

15

Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." Id. (citing cases). Bennington's communications with Darwin in Missouri by telephone, mail and fax are insufficient to support the exercise of personal jurisdiction. See Dairy Farmers, 702 F.3d at 479.

For these reasons, the Court concludes that Bennington's contacts with Missouri are insufficient to indicate that it purposely availed itself of the benefits and protections of the laws of Missouri, or of the privilege of conducting activities here through "systematic and continuous" contacts. See International Shoe, 326 U.S. at 320. Darwin has failed to show that Bennington should have reasonably anticipated being haled into court in Missouri. See Burger King, 471 U.S. at 474. As a result, to compel Bennington to appear in court in Missouri would offend traditional notions of fair play and substantial justice. See id. at 316. The evidence before the Court is insufficient to justify the exercise of personal jurisdiction over Bennington.

## IV. Conclusion

For the foregoing reasons, the Court concludes that it lacks personal jurisdiction over defendant Bennington College Corporation, and will grant its motion to dismiss for lack of personal jurisdiction. Bennington's alternative motion to transfer for improper venue will be denied as moot.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Bennington College Corporation's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., is **GRANTED**. [Doc. 9]

**IT IS FURTHER ORDERED** that defendant Bennington College Corporation's alternative motion to transfer for improper venue is **DENIED as moot**. [Doc. 9]

An appropriate order of dismissal will accompany this memorandum and order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  31st  day of March, 2015.